United States District Court
District of Massachusetts

| | |
|---|---|
| Homeowner Options for Massachusetts Elders, Inc., <br>     Plaintiff, <br><br> v. <br><br> Brookline Bancorp, Inc., Brookline Savings Bank, Brookline Bank, Brookline Bancorp, M.H.C., and John Doe 1-88, <br>     Defendants. | Civil Action No. 09-11790-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Homeowner Options for Massachusetts Elders, Inc. ("H.O.M.E.") brings suit against defendants Brookline Bancorp, Inc., Brookline Savings Bank, Brookline Bank, and Brookline Bancorp, M.H.C. (collectively "Brookline Bank"), as well as John Doe 1-88, for various counts of copyright and trademark infringement.

**I.  Background**

   **A. Factual Background**

H.O.M.E. is a Massachusetts non-profit corporation that provides mortgage counseling services for the elderly throughout Massachusetts. Until 1989, it was named the Massachusetts Elderly Equity Program ("M.E.E.P.") but it changed its name that

year and has been known as H.O.M.E. since then.  It claims trademark protection in its acronym by virtue of its continuous use and name recognition in the Greater Boston area.

Brookline Bank is a federally chartered stock savings institution owned by Brookline Bancorp, Inc., which is a publicly traded savings and loan holding company incorporated under Delaware law with its principal place of business in Massachusetts.

In February of 1986, H.O.M.E. created the Massachusetts Elderly Equity Program: Operating Manual ("the 1986 Manual"), which included the FNMA/FHLMC Uniform Instrument ("FNMA Mortgage Form").  From January 1987 through the spring of 1988, Gabriel Nizetic ("Nizetic"), an intern for a joint program coordinated by the Boston Bar Association and the New England School of Law, worked under the supervision of Stephen Greenbaum ("Greenbaum"), H.O.M.E.'s President and Director, and Leonard Raymond ("Raymond"), H.O.M.E.'s Chief Operating Officer and Director. Nizetic created the Reverse Mortgage Loan Standardized Documentation Package, which included a mortgage form ("H.O.M.E. Mortgage Form").  Nizetic's works were combined with parts of the 1986 Manual in a revised version of the manual ("the 1989 Manual").

On February 12, 1990, Nizetic signed a release ("the Release") granting H.O.M.E. "any and all right, title, and

interest...in or to the Reverse Mortgage Loan Standardized Documentation Package." On July 29, 2010, more than 20 years later, Nizetic also signed the Copyright Ownership Agreement ("the Nunc Pro Tunc") reiterating the Release.

On August 27, 1990, H.O.M.E. applied for and received copyright registration by the United States Copyright Office for the 1986 Manual. On April 18, 1991, H.O.M.E. applied for and received a second copyright registration for the 1989 Manual.

H.O.M.E. set up a reverse mortgage program, through which participants pay fees to H.O.M.E. in return for a limited license to use its allegedly proprietary documents, including the H.O.M.E. Mortgage Form, H.O.M.E. Loan Reverse Annuity Analysis & Schedule Order Form ("Order Form") and manuals. In September 1991, Brookline Bank agreed to pay annual participation fees and continued to pay those fees until 1997. Brookline Bank received the allegedly proprietary materials as part of its participation. During that time period, H.O.M.E. and Brookline Bank conducted business with Financial Publishing Company ("FPC"), a company that provides financial analysis and schedules in connection with reverse mortgages.

On ten occasions between January 2004 and December 2009, after it terminated its participation in the program, Brookline Bank sent signed copies of the Order Form to FPC. The Order Form contains the acronym "H.O.M.E." at the top and twice in the body

of the form. The defendants assert that FPC provided this form to them and that it was used solely for submission to FPC. For the mortgages underlying those transactions, Brookline Bank allegedly used the H.O.M.E. Mortgage Form without H.O.M.E.'s permission.

With respect to the copyright counts, H.O.M.E. claims that: 1) it has exclusive copyright ownership in its materials, 2) the defendants infringed its copyright by reproducing and distributing the H.O.M.E. Mortgage Form, 3) such infringement was willful because it was for the purpose of commercial advantage and 4) it is entitled to an injunction and award of damages and fees.

In response, Brookline Bank: 1) questions the validity and ownership of the copyrights, 2) asserts that mortgage forms are uncopyrightable in subject matter and 3) argues that the H.O.M.E. Mortgage Form lacks the requisite originality because it was copied from a pre-existing form in the public domain, purportedly the FNMA Mortgage Form.

With respect to the trademark counts, H.O.M.E. contends that: 1) Brookline Bank committed trademark infringement by using the Order Form, 2) Brookline Bank issued mortgages with terms violative of state regulations, such that the use of the trade name and trademark "H.O.M.E." on the Order Form creates a harmful and false association in the minds of the public, 3) Brookline

Bank's use of the form is likely to cause confusion as to affiliation, injure H.O.M.E.'s business reputation and create a false impression, and 4) it is entitled to an injunction, lost profits, damages and fees.

**B. Procedural History**

The plaintiff's complaint, filed on October 23, 2009, alleges five counts against the defendants:

1) copyright infringement under 17 U.S.C. § 501 (Count I),

2) willful copyright infringement under 17 U.S.C. § 504(c)(2) (Count II),

3) trademark infringement under the Lanham Act § 43(a), 15 U.S.C. § 1125(a) (Count III),

4) Massachusetts trademark infringement under M.G.L.A. 110h § 13 (Count IV), and

5) common law trademark infringement (Count V).

On March 15, 2010, the defendants filed an answer and moved for judgment on the pleadings on Counts I and II and for summary judgment on Counts III, IV and V. On April 20, 2010, the plaintiff filed a motion for summary judgment on Counts I and II and, in the alternative, an objection to defendants' motion for judgment on the pleadings on Counts I and II. The plaintiff also filed an opposition to defendants' motion for summary judgment on the remaining counts.

On June 10, 2010, the defendants' filed a reply to the plaintiff's objection to motion for judgment on the pleadings on Counts I and II and for summary judgment on Counts III, IV and V,

as well as an opposition to plaintiff's motion for summary judgment on Counts I and II. On July 29, 2010, plaintiff filed a surreply to defendants' opposition to its motion for summary judgment on Counts I and II.

**II. Analysis**

    **A. Legal Standard**

        **1. Motion for Judgment on the Pleadings**

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is treated similarly to a Rule 12(b)(6) motion. Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008). To survive such a motion, the complaint must contain factual allegations that "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court must view the facts presented in the pleadings and all reasonable inferences to be drawn therefrom in the light most favorable to the non-moving party. R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006).

If materials outside the pleadings are presented to the Court, the Court has broad discretion to choose whether to exclude those materials or to convert the motion for judgment on the pleadings to a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 38 (1st Cir. 2004). The party opposing the motion must

be given 1) adequate notice of the conversion and 2) a reasonable opportunity to present material made pertinent to such a motion by Rule 56. Gulf Coast, 355 F.3d at 38. Constructive notice, such as notice based on the fact that additional materials were submitted by either the movant or non-movant, is sufficient. Id.; Collier v. City of Chicopee, 158 F.3d 601, 603 (1st Cir. 1998). An interval which exceeds the time period specified in Rule 56(c) constitutes a reasonable opportunity to present evidence in opposition. See Gulf Coast, 355 F.3d at 38 (finding ten-day period previously allowed by Rule 56(c) sufficient); Collier, 158 F.3d at 604 n.3.

### 2. Motion for Summary Judgment

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (citations omitted). The burden is on the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of

material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law, then summary judgment is appropriate.

**B. Application**

**1. Motion for Judgment on the Pleadings**

The defendants move for judgment on the pleadings under Fed. R. Civ. P. 12(c) with respect to Counts I and II. The Court elects to convert the defendants' motion for judgment on the pleadings to a motion for summary judgment, resulting here in cross-motions for summary judgment on Counts I and II. The plaintiff offered additional materials (including Raymond's affidavit) in its opposition to the defendants' motion that the defendants then incorporated into their reply, so both parties

had constructive notice of the conversion based on the fact that additional materials were submitted. Courts are generally concerned with whether the non-moving party (the plaintiff here) had notice, and it was the plaintiff itself who submitted the additional materials. E.g., Rubert-Torres v. Hosp. San Pablo, Inc., 205 F.3d 472, 475-76 (1st Cir. 2000). Furthermore, the plaintiff's motion for summary judgment on Counts I and II was intended as a response to the defendants' motion for judgment on the pleadings, and numerous extensions of time afforded the parties a reasonable opportunity to present evidence.

### 2. Motion for Summary Judgment

#### a. Copyright Claims (Counts I and II)

The defendants contend that they are entitled to judgment on the pleadings (now converted into a motion for summary judgment) with respect to the copyright infringement claims (Counts I and II) because: 1) mortgage forms are not copyrightable subject matter and 2) the H.O.M.E. Mortgage Form lacks the originality necessary to receive copyright protection in that it was copied from the FNMA Mortgage Form, a pre-existing public domain form. The plaintiff moves for summary judgment on the same counts on the grounds that the defendants' use and distribution of the H.O.M.E. Mortgage Form constitutes infringement and willful infringement.

As an initial matter, there do not appear to be valid

grounds why mortgage forms in general should not be protected under the law of copyright. See Merritt Forbes & Co. v. Newman Inv. Sec., Inc., 604 F. Supp. 943, 949 (S.D.N.Y. 1985) (citing 1 Nimmer on Copyrights § 2.18[E]). Some cases suggest that similar documents are copyrightable. See Fin. Control Assoc., Inc. v. Equity Builders, Inc., 799 F. Supp. 1103, 1119 (D. Kan. 1992) (implying portions of a mortgage document were copyrightable); Merritt, 604 F. Supp. at 948-49 (noting public policy does not preclude bond underwriting documents from copyright protection).

To prevail on a copyright infringement claim, the alleged copyright owner must prove ownership of a valid copyright and the unauthorized copying of elements of the work that are original. Feist Publ'ns, Inc. v. Rural Tel. Servs. Co., 499 U.S. 340, 361 (1991). The originality requirement is satisfied if the work is independently created by the author and possesses some minimal or "extremely low" degree of creativity. Id. at 345. Copyright protection extends only to the elements of the work that are original to the author, which may include the selection, coordination and arrangement of a compilation. Id. at 348-49. A derivative work need only exhibit the same "quantum of originality" as required for copyright in any other work, which is met if the derivative work

> contains a nontrivial variation from the preexisting work sufficient to render the derivative work distinguishable from the prior work in any meaningful manner.

Schrock v. Learning Curve Int'l, Inc., 586 F.3d 513, 520 (7th Cir. 2009) (citations omitted). The extent to which the plaintiff's work "contain[s] protected expression is a matter of law, determined by the court." Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC, 259 F.3d 25, 34 n.5 (1st Cir. 2001).

Copyright ownership vests in the author of a work, who is the person who creates the work. 17 U.S.C. § 201(a); Cmty. for Creative Nonviolence v. Reid, 490 U.S. 730, 737 (1989). An important exception to this requirement is a "work made for hire," which includes works

> specially ordered or commissioned for use as a contribution to a collective work...if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.[1]

17 U.S.C. § 101. A writing executed after the work's creation that confirms a prior agreement may suffice but it must mention a "work made for hire" relationship and must be signed by both parties. Playboy Enters., Inc. v. Dumas, 53 F.3d 549, 559-60 (2d Cir. 1995); Schiller & Schmidt, Inc. v. Nordisco Corp., 969 F.2d 410, 412 (7th Cir. 1992) (the statutory language is "signed by them," 17 U.S.C. § 101(2), i.e. by both parties). By contrast, an assignment of a copyright requires a writing signed only by the grantor. 17 U.S.C. § 204(a).

---

[1] A "work made for hire" also includes a work prepared by an employee within the scope of his employment but the plaintiff concedes for the purposes of its summary judgment motion that Nizetic was an independent contractor and not an employee of H.O.M.E. 17 U.S.C. § 101.

-11-

The works here do not fall under the "work made for hire" exception. Both parties agree that Nizetic, an intern, created the documents, and the plaintiff offers Nizetic's Release as evidence of H.O.M.E.'s ownership. The fact that the Release was not signed until three years after the creation of the work does not necessarily preclude its consideration because a later signed writing may evidence a prior agreement. See Playboy, 53 F.3d at 559. However, the Release is signed by only one party, rather than both as required by statute, and neglects to mention a "work made for hire" relationship.

Nonetheless, H.O.M.E. now owns the copyrights in the documents at issue because the Release was sufficient to constitute an assignment of Nizetic's copyrights to H.O.M.E. See 17 U.S.C. § 204(a). Thus, H.O.M.E. has owned the copyrights since the date of assignment (which was prior to its copyright registrations) and may sue for their infringement. See 17 U.S.C. § 501(b).

Although the parties disagree as to whether the H.O.M.E. Mortgage Form meets the originality required for copyright protection as a literary work, this Court need not decide that issue. Even if the H.O.M.E. Mortgage Form was based on the FNMA Mortgage as the defendants allege, rather than independently created, the H.O.M.E. Mortgage Form exhibits sufficient creativity in its selection, coordination and arrangement to

constitute a copyrightable derivative work. Indeed, the plaintiff assumes, for the purpose of its motion only, that the H.O.M.E. Mortgage Form was copied from the FNMA Mortgage Form.

In the First Circuit, the extent to which the plaintiff's work "contain[s] protected expression is a matter of law, determined by the court." Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC, 259 F.3d 25, 34 n.5 (1st Cir. 2001); see also Real View, LLC v. 20-20 Tech., Inc., 683 F. Supp. 2d 147, 150 (D. Mass. 2010). A comparison of the H.O.M.E. Mortgage Form with the FNMA Mortgage Form reveals that there is sufficient, nontrivial, expressive variation in the former to make it distinguishable from the latter in some meaningful way. See Schrock, 586 F.3d at 520. Although some of the 100 or more differences between the wording and arrangement are trivial, the cumulative effect reveals a sufficiently distinguishable work. While this is a close question, for the purpose of dealing with this dispositive motion, the Court finds that the plaintiff's form meets the originality required to be a derivative work.

Furthermore, the defendants' use and distribution of the plaintiff's form constitutes infringement. The copyright owner may infer copying through proof that the infringer had access to the copyrighted work and that there is a sufficient degree of similarity between the works. Johnson v. Gordon, 409 F.3d 12, 18 (1st Cir. 2005). Indeed, the defendants do not dispute that

they: 1) received the copyrighted forms during their participation in H.O.M.E.'s licensing program from 1991-1997 (access prong) and 2) used the plaintiff's H.O.M.E. Mortgage Form without the plaintiff's permission on at least ten occasions after 1998 (similarity prong). Thus, the defendants infringed the plaintiff's copyrights.

In addition, Count II alleges willful copyright infringement. An infringement is willful if the defendants knew or should have known that their conduct constituted copyright infringement, or acted in reckless disregard of the copyright holder's rights. Fitzgerald v. CBS Broad., Inc., 491 F. Supp. 2d 177, 190-91 (D. Mass. 2007). The question of whether an infringement was willful is a mixed question of law and fact. Id. at 190.

Here, the defendants received the copyrighted material as a licensee of the copyright owner's licensing program and continued to use the copyrighted work after the license was terminated (due to the defendants' own decision not to renew the license on grounds other than a belief that the materials were not subject to copyright protection). Such action constitutes willful copyright infringement. See Clever Covers, Inc. v. Sw. Fla. Storm Def., LLC, 2007 U.S. Dist. LEXIS 97479, at *13-14 (M.D. Fla. Dec. 18, 2007) (adopted by Clever Covers, Inc. v. Sw. Fla. Storm Def., LLC, 554 F. Supp. 2d 1303 (M.D. Fla. 2008)).

Moreover, the defendants received further notice that their conduct might constitute infringement when the Complaint in this case was filed, and yet they continued to use the copyrighted materials. See Columbia Pictures Tel. v. Krypton Broad. of Birmingham, 106 F.3d 284, 293-94 (9th Cir. 1997) (finding willful infringement where infringing episodes were broadcast after clear termination of licensing agreement and some were broadcast after complaint in case was filed), rev'd on other grounds, Feltner v. Columbia Pictures Tel., Inc., 523 U.S. 340 (1998) (reversing on ground that statutory damages is a question for the jury).

Finally, because the defendants raised in their answer but not in their motions the defense of fair use, the Court briefly addresses that issue. Fair use is determined by examining four factors:

> 1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes,
>
> 2) the nature of the copyrighted work,
>
> 3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole, and
>
> 4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. The first and fourth factors often are afforded the greatest weight. See Campbell v. Acuff-Rose Music, 510 U.S. 569, 578-79 (1994). The inquiry under the first factor is whether the new work is transformative rather than a mere

successor to the original. Id. at 578-79. Here, the defendants' use is not fair because: 1) it is for the same purpose as the plaintiff's, merely supplanting the plaintiff's form, 2) it copies the H.O.M.E. Mortgage Form in its entirety and 3) it denies the plaintiff revenues it would otherwise receive in licensing fees.

Because there are no genuine issues of material fact, and the undisputed facts lead to the conclusion that the plaintiff owns a copyright in the H.O.M.E. Mortgage Form and that the defendants willfully infringed that copyright, the plaintiff is entitled to summary judgment on the copyright claims.

### b. Trademark Claims (Counts III, IV and V)

Defendants move for summary judgment on the trademark infringement claims (Counts III, IV and V) on the basis that there is no actionable likelihood of confusion regarding the use of the Order Form. The defendants assume, for the purpose of this motion, that the plaintiff owns a valid trademark and that the submission of the Order Form (containing that trademark) by Brookline Bank to FPC constitutes use of that trademark.

To succeed on its claims for trademark infringement, the plaintiff must prove that it owns a protectable mark and that there is an actionable likelihood of confusion. Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 116 (1st Cir. 2006). Likelihood of confusion is assessed based on eight

factors: 1) similarity of the marks, 2) similarity of the goods, 3) relationship between the parties' channels of trade, 4) relationship between the parties' advertising, 5) classes of prospective purchasers, 6) evidence of actual confusion, 7) defendant's intent in adopting its mark and 8) strength of plaintiff's mark. Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp., 376 F.3d 8, 15 (1st Cir. 2004) (citations omitted).

The most important factors are evidence of actual confusion, similarity of the marks, similarity of the goods and strength of the plaintiff's mark. Beacon, 376 F.3d at 20. Indeed,

> evidence of actual confusion is often considered the most persuasive evidence of likelihood of confusion because past confusion is frequently a strong indicator of future confusion.

Id. at 18. Actual confusion is commercially relevant if the defendants' use of the mark could inflict commercial injury by damage to goodwill or harm to reputation, and the inquiry

> is not limited to actual or potential purchasers, but also includes others whose confusion threatens the trademark owner's commercial interest in its mark...[and furthermore,] relevant confusion among non-purchasers may well extend beyond the confusion of those persons positioned to influence directly the decision of purchasers.

Id. at 15-17.

The parties agree that Brookline Bank received the Order Form during the 1992-1997 period of participation in H.O.M.E.'s program. However, there are genuine issues of material fact as to whether Brookline Bank also received the Order Form from FPC

-17-

in 2004 and whether Brookline Bank used the form for purposes other than submission to FPC. Brookline Bank asserts 1) it received the form from FPC in 2004, 2) that in the relevant 2004-2009 time period it used the form solely in its communications with FPC and 3) that FPC could not be confused because it gave the form to Brookline Bank in the first place. H.O.M.E. retorts that 1) the defendants' subsequent continued use led to actual confusion of continued affiliation, as suggested by FPC's mistaken submission of the form to H.O.M.E. on several occasions and 2) it is unclear whether Brookline Bank used the form for other purposes, leaving open the possibility of confusion by others.

Viewing the facts in the light most favorable to H.O.M.E., the non-moving party, a fact finder could reasonably infer that Brookline Bank's use of the Order Form was likely to cause confusion as to continued affiliation between the plaintiff and defendants. FPC's mistaken submission of the Order Form to H.O.M.E., despite Brookline Bank's instruction on the form to the contrary, indicates actual confusion, which is persuasive evidence of likelihood of confusion. The confusion of non-purchasers, such as FPC and others who may have received the form, is relevant to the inquiry into likelihood of confusion and would be commercially relevant if it injures H.O.M.E.'s goodwill and reputation.

Because there are genuine issues of material fact, and a fact finder could reasonably conclude that there is a sufficient likelihood of confusion, the plaintiff's trademark infringement claims will survive summary judgment.

**ORDER**

In accordance with the foregoing, the defendants' motion for judgment on the pleadings on Counts I and II and for summary judgment on Counts III, IV and V (Docket No. 15) is **DENIED,** and the plaintiff's motion for summary judgment on Counts I and II (Docket No. 22) is **ALLOWED.**

**So ordered.**

                                      /s/ Nathaniel M. Gorton  
                                      Nathaniel M. Gorton  
                                      United States District Judge

Dated December 1, 2010